## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

**SAMUEL P. HALL AND BRENDA HALL**                                    **PLAINTIFFS**

**VS.**                          **CASE NO.  2-09-CV-0091 BSM**

**DAVID H. ARRINGTON OIL AND GAS, INC.**                         **DEFENDANT**

## ORDER

Plaintiffs Samuel P. Hall and Brenda Hall move for partial summary judgment (Doc.

Nos. 27, 54) on their breach of contract claim.  Defendant David H. Arrington Oil objects

(Doc. No. 34) and plaintiffs have replied (Doc. Nos. 38, 39).  For the reasons set forth below,

plaintiffs' motion for partial summary judgment is granted.

## I. FACTS

Viewing the facts in the light most favorable to Arrington, the non-moving party, the

facts are as follows.   The Halls and Arrington executed an Oil and Gas Lease (the "Lease")

on July 17, 2006.  Lease attached at Exhibit 1 to Complaint. Each lease provides, in part:

> THIS AGREEMENT is made and entered into on this 17th day of July, 2006
> (the effective date hereof) between Samuel P. Hall and Brenda C. Hall,
> husband and wife, whose address is P.O. Box 519, Marvel, Arkansas 72366,
> hereinafter called Lessor (whether one or more), and David H. Arrington Oil
> & Gas Inc., P.O. Box 2071, Midland, Texas 79702, hereinafter called Lessee.
>
> Witnesseth: That the said Lessor, for and inconsideration of a cash bonus in
> hand paid, the receipt of which is hereby acknowledged, and of the covenants
> and agreements hereinafter contained on the part of Lessee to be paid, kept,
> and performed, has GRANTED, DEMISED, LEASED and LET, and by these
> presents does GRANT, DEMISE, LEASE and LET unto the said Lessee, for
> the sole and only purpose of exploring by geophysical and other methods,
> mining and operating for oil (including but not limited to distillate and
> condensate) gas (including casinghead gas and helium and all other

constituents), and for laying pipelines and building tanks, powers, stations, and structures thereon, to produce, save, and take care of said products, all that certain tract of land, together with any reversionary rights therein, situated in the County of Phillips, State of Arkansas, and described as follows:
. . .
and containing 603.98 acres, more or less.  In addition to the land described above, Lessor hereby grants, leases, and lets exclusively unto Lessee, to the same extent as it specifically described herein, all lands owned or claimed by Lessor which are adjacent, contiguous to, or form a part of the lands above particularly described, including all oil, gas, and their constituents underlying lakes, rivers, streams, roads, easements, and right-of-way which traverse or adjoin any of said lands.

1.      This lease, which is a "paid-up" lease requiring no rentals, shall be in force for a primary term of <u>five (5) years</u> from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the lease premises or from lands pooled therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof.
. . .
13.      This lease shall be effective as to each Lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the Lessors above named may not join in the execution hereof.  The word Lessor as used in this lease means the party or parties who execute this lease as Lessor although not named above.

14.      Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to Lessor, or by placing a release of record in the proper County.
. . .
Exhibit 1, Compl.

Arrington also gave the Halls a bank draft, dated the same day as the Lease, for

$181,194.  Draft attached at Exhibit 3 to Complaint.  The draft provided, in part:

On approval of lease or mineral deed described hereon, and on approval of title to same by drawee not later than 5 banking days after arrival of this draft at Collecting bank.
. . .
This draft is drawn to pay for Oil and Gas Lease, dated July 17, 2006 and

covering 603.98 acres, more or less, being a tract of land in . . . Phillips County, Arkansas.

The drawer, payee and endorsers hereof, and the grantors of the lease or mineral deed described hereon, do hereby constitute and appoint the collecting bank escrow agent to hold this draft for the first time above specified subject alone to acceptance of payment hereof by drawee, within said time, and without any right of the drawer, payee or endorsers hereof, or said grantors, to recall or demand return of this draft prior to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusal to return the same prior to such expiration.

In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto.

Exhibits 3, Compl.  The Halls' draft is stamped to indicate that it was submitted for payment on July 19, 2006 at Helena National Bank in Helena, Arkansas.  *Id*.  It is also stamped to indicate it was returned unpaid on July 27, 2006 by Western National Bank in Midland, Texas.  *Id*.  The collection letter from Western National Bank has "will re-draft" handwritten on it.  Collection letter also attached at Exhibit 3 to Compl.

Plaintiffs filed their complaint on July 16, 2009, alleging breach of contract, fraud, and seeking compensatory as well as punitive damages.  They now seek partial summary judgment on their breach of contract claim, arguing (1) a binding contract exists between the parties; (2) the language of the draft contradicts the language of the lease, so the draft language should control; (3) they warranted their title and should have had an opportunity to cure any defects; and (4) the draft was an unconditional promise to pay by Arrington.  Arrington objects, arguing (1) the draft contained at least one condition precedent to title

approval; (2) because the condition precedent failed and the potential agreement lacked

mutuality, no contract was formed; and (3) the plaintiffs do not hold clear title to the mineral

interests they attempted to lease to Arrington.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmovant, no genuine issues of

material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr.

Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*,

518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the

record] . . . which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not

required to support its motion with affidavits or other similar materials negating the

opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine

dispute on a material fact, the non-moving party may not rest upon the mere allegations or

denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56,

must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P.

56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against

a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

Summary judgment on plaintiffs' breach of contract claim is appropriate because a contract formed between the parties and Arrington failed to pay on the contract. Pursuant to the analysis in *Whistle v. David H. Arrington Oil*, Case No. 2:08-CV-00037-BSM (June 1, 2009) (Doc. No. 48), the draft placed only one condition precedent, title approval by Arrington, on the formation of each lease contract. Even though Arrington maintains additional conditions precedent existed, *Whistle* still controls, and the only issue is whether Arrington disapproved of plaintiffs' title in good faith.

The Halls assert that the draft and lease should not be treated as one instrument, as they were in *Whistle*, because the draft was presented and executed separately from, or after, the lease. Plaintiffs argue the lease language should control, and the draft language should not be effective. Plaintiffs' argument is not compelling, however, because the draft and lease are dated on the same day, July 17, 2006, just as they were in *Whistle*. The documents will be treated as one instrument, as they were in *Whistle*. The documents placed a sole condition precedent, that of title approval by Arrington, on the formation of each lease contract.

The record indicates that the draft was dishonored for reasons unrelated to title. Arrington has admitted that it denied payment on drafts drawn for leases in Phillips County

after July 26, 2006 based on a "corporate decision related to financial considerations and the belief that extraction was not a viable venture in that area."  Defendant's third supplemental response to plaintiffs' first set of interrogatories and requests for production in *Kemmer*, attached at Exhibit A to Supplement to plaintiffs' motion for partial summary judgment (Doc. No. 54), 4-5.  Arrington also admits that while it performed some initial "minimal" title work on Phillips County leases and drafts, it performed no additional title work until after the drafts and leases were declined.  *Id*. at 3.  Further, Arrington admits "a decision was made in [Arrington's] Midland office to decline the lease offers and related drafts in Phillips County based upon the language of the drafts and lease offers without additional title work."  *Id*.  Finally, Arrington maintains it declined all submitted drafts due to title defects except for those the Phillips County lease offers and drafts that were declined after July 26, 2006.  *Id*. at 4.

The Halls maintain that there is no dispute but about the reason Arrington dishonored plaintiffs' draft.  Indeed, the Halls claim, Arrington dishonored the draft for financial reasons having to do with the fact that it drilled a dry hole.  This is shown by the facts set forth above, and is supported by Arrington's deposition testimony in *Whistle*, in which he testified that he dishonored the Whistles' draft because Arrington drilled a dry hole nearby.  He also testified that if the well was a producing well, he "probably would have paid" the Whistles' draft.  The Halls further point to the contents of Arrington's lease file, which their counsel received as part of discovery in *Kemmer*.  They maintain nothing in the file indicates

Arrington denied the draft because of title problems.

In Arrington's response to the Halls' motion, Arrington argues a factual dispute remains as to the quality of plaintiffs' title. Arrington does not argue, however, that it denied the draft because of defects in plaintiffs' title. Even though this causal relationship is at issue, Arrington's arguments address the marketability of title, which is not at issue.

The lease and draft language required that Arrington must approve the Halls' title within a certain time for a contract to form. So, even if the Halls did not hold good title, Arrington still must have disapproved the Halls' title in good faith, based on actual title problems it discovered during the time allowed by the draft. The record indicates Arrington performed title work either before, or just when it began lease negotiations with the Halls, but it did not perform further title investigation until after it denied the Halls' draft.

It undisputed that Arrington denied plaintiffs' drafts for reasons unrelated to title. Arrington thus did not opt out of the lease contract in the lone way provided by the draft language. The Halls clearly had a contract with Arrington, and Arrington's failure to pay plaintiffs' drafts clearly constitutes a breach of contract.

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment (Doc. Nos. 27, 54) is granted.

IT IS SO ORDERED THIS 19th day of August, 2010.

_____
UNITED STATES DISTRICT JUDGE